IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| REBEKAH CHAPLIN, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:14-CV-935-Y-BL |
| § | |
| § | |
| CAROLYN W. COLVIN, § | |
| Acting Commissioner of Social Security, § | |
| § | |
| Defendant. § | Referred to U.S. Magistrate Judge |

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Plaintiff Rebekah Rene Chaplin ("Chaplin") seeks judicial review of the Commissioner of Social Security's ("Commissioner") decision, which denied her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The United States District Judge referred the case to this Court pursuant to 28 U.S.C. § 636(c) and the parties have not consented to proceed before a United States Magistrate Judge.

After considering all the pleadings, briefs, and administrative record, this Court recommends that the Commissioner's decision be affirmed.

## I.   BACKGROUND

Chaplin claims that she became disabled on July 15, 2008, due to anxiety, depression, back pain, arthritis, ear problems, bladder issues, and scoliosis. (Tr. 251). Chaplin filed an application for DIB on November 5, 2009. (Tr. 225). Chaplin's application was initially denied on April 19, 2010, and on reconsideration on December 14, 2010.[1] (Tr. 124, 132). Subsequently,

---

[1] Chaplin had her initial administrative hearing before ALJ Ruth Markart on September 21, 2011. ALJ Markart denied Chaplin's request for benefits but the Appeals Council remanded the case to ALJ Helsper on December 5, 2012. (Tr. 102-118). Hereafter, "ALJ" will refer solely to ALJ Helsper.

1

Chaplin requested and received a hearing before Administrative Law Judge William Helsper ("ALJ") on August 5, 2013. (Tr. 11-20). On September 10, 2013, the ALJ issued an unfavorable decision finding that Chaplin was not disabled and was capable of performing jobs that exist in significant numbers in the national economy. (Tr. 19).

The ALJ followed the sequential five-step analysis to arrive at this decision.[2] First, the ALJ determined that Chaplin had not engaged in substantial gainful activity since the date of her alleged onset of disability, July 15, 2008, through the date she was last insured, December 31, 2011. (Tr. 13). Therefore, the relevant time period for this application and the Court's review is July 15, 2008, through December 31, 2011. Next, the ALJ determined that Chaplin suffered from the following severe impairments: disorders of the back including degenerative spondylosis of the lumbar spine, anxiety, and depression. (Tr. 13). Third, the ALJ surmised that Chaplin's severe impairments did not equal the severity of the impairments in the Listings.[3] (Tr. 13-15). Next, the ALJ determined that Chaplin had the residual functional capacity ("RFC") to perform sedentary to light work activity, with the option to alternate between sitting and standing. (Tr. 15). Also, the ALJ determined that Chaplin is limited to simple tasks without contact with the public. (Tr. 15). Next, the ALJ concluded that Chaplin could not return to her past relevant work as a hairdresser, but that she could perform other jobs that exist in significant numbers in the national economy. (Tr. 18-19). Finally, the ALJ determined that Chaplin was not disabled within the meaning of the Social Security Act. (Tr. 20).

The Appeals Council denied review on September 23, 2014. (Tr. 1). The ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *See*

---

[2] *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).
[3] *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.

*Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (stating that the Commissioner's final decision "includes the Appeals Council's denial of [a claimant's] request for review").

## II. LEGAL STANDARD

A person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382c(a)(3)(A), 423(d)(1)(A) (2012). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)-(b). To evaluate a disability claim, the Commissioner employs the following five-step sequential analysis to determine:

> 1) whether the claimant is presently engaging in substantial gainful activity, 2) whether the claimant has a severe impairment, 3) whether the impairment is listed, or equivalent to an impairment listed in appendix I of the regulations, 4) whether the impairment prevents the claimant from doing past relevant work, and 5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Leggett v. Chater*, 67 F.3d 558, 564 n. 2 (5th Cir. 1995); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of showing [she] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). Before proceeding to steps four and five, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart,* 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

This Court's review of the Commissioner's decision to deny disability benefits is limited to an inquiry into whether substantial evidence supports the Commissioner's findings, and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson*, 309 F.3d at 272; *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). If substantial evidence supports the Commissioner's findings, then the findings are conclusive and the court must affirm the Commissioner's decision. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. Moreover, "'[c]onflicts in the evidence are for the Commissioner and not the courts to resolve.'" *Id*. (quoting *Newton*, 209 F.3d at 452).

### III. ANALYSIS

Chaplin raises one issue on appeal: (1) whether substantial evidence supports the ALJ's Step Three finding that Chaplin's severe physical impairment did not meet or equal Listing level severity. (Doc. 19, p. 3).

**A. The ALJ did not err when conducting the Step Three evaluation.**

Chaplin contends that the ALJ conducted a faulty analysis at step three of the sequential evaluation process by failing to consider her back impairment under the proper Listing. (Doc. 19, p. 4). Step three requires an ALJ to determine whether a claimant's impairments, either alone or in combination, meet or equal one or more of the "Listings" as set forth in 20 C.F.R. Part 404,

Subpart P, Appendix 1. *Audler v. Astrue*, 501 F.3d 445, 448 (5th Cir. 2007). Disability is conclusively presumed if a claimant meets or equals one or more of these Listings. *Loza v. Apfel*, 219 F.3d 378, 390 (5th Cir. 2000); 20 C.F.R. § 416.920(d). If the claimant fails to meet one or more of the listings, the evaluation proceeds to the fourth and fifth steps. *Loza*, 219 F.3d at 390.

The claimant bears the burden at this step to prove, with medical evidence, that *all* the criteria of the Listings are met. *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). "An impairment 'meets' a listed condition in the Listing of Impairments only when it manifests the specific findings described in the set of medical criteria for that listed impairment." S.S.R. 83-19, 1983 WL 31248 at *2 (Jan. 1, 1983). Disability will not be found based on a diagnosis alone. *Id.* In order to "equal" a listed impairment, "the set of symptoms, signs, and laboratory findings in the medical evidence supporting a claim must be compared with the set of symptoms, signs, and laboratory findings specified for the listed impairment most like the individual's impairment(s)." *Id.* To judge the "equivalence" of a claimant's impairment(s), the medical findings must be "at least equivalent in severity to the set of medical findings for the listed impairment." *Id.* "In no instance will symptoms alone justify a finding of equivalence." *Id. at 3*. Thus, for a claimant to show that she "equals" a listed impairment, she "must present medical findings equal in severity to *all* the criteria for the one most similar impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (emphasis in original); 20 C.F.R. § 416.926(a). Finally, the durational requirement mandates that the claimant show that the impairment met or equaled a Listing "for a continuous period of at least 12 months." *See* 20 C.F.R. §§ 404.1509, 404.1520(d).

Here, the ALJ considered whether Chaplin's impairments met or equaled one or more of the Listings. (Tr. 14). The ALJ did not specifically enumerate which Listings that he considered regarding Chaplin's back pain, but he did indicate that Chaplin's "impairments do not meet the

5

requirements of *any* sections of the Listings of Impairments." (Tr. 14) (emphasis added). Chaplin argues that her condition meets Social Security Listing 1.04A, which requires a diagnosis of a spinal disorder resulting in compromise of a nerve root or the spinal cord. 20 C.F.R. Pt. 404, Subpt. P, App. 1. "In addition to the diagnostic component, a claimant must satisfy one of Listing 1.04's three subparts, 1.04A, 1.04B, or 1.04C—that is, the severity component." *Herrera v. Colvin*, No. 3:14-CV-2725-BN, 2015 WL 5326164, at *4 (N.D. Tex. Sept. 14, 2015). In order to meet or equal the criteria of Listing 1.04A, the record must contain evidence of (a) "nerve root compression characterized by neuro-anatomic distribution of pain," (b) "limitation of motion of the spine," (c) "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss," and (d), "if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Pt. 404, Subpt. P, App. 1. The Commissioner counters that Chaplin failed to demonstrate *all* of these criteria, as required by *Zebley*, 493 U.S. at 531. (Doc. 20, p. 5). Moreover, the Commissioner contends that much of the evidence that Chaplin uses to justify her position pertains to an irrelevant period of time after the date that Chaplin was last insured. (Doc. 20, p. 6).

First, to demonstrate that she meets Listing 1.04A, Chaplin must show that she has been diagnosed with a spinal disorder ("e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture") that results in compromise of a nerve root or the spinal cord. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. Chaplin points out that the ALJ acknowledged that she suffered from degenerative spondylosis of the lumbar spine, which is "[a]nkylosis[4] of the vertebra; often applied nonspecifically to any lesion of the spine of a degenerative nature." *Stedman's Medical Dictionary* 1678 (27th ed.

---

[4] Ankylosis is the "stiffening or fixation of a joint as the result of a disease process, with fibrous or bony union across the joint." *Stedman's Medical Dictionary* 90 (27th ed. 2000).

2000). Chaplin also argues that her medical records generally "contain evidence of nerve root compression." (Doc. 19, p. 5). In support, Chaplin cites examination notes from June 18, 2008; July 1, 2008; June 20, 2012; August 17, 2012; August 30, 2012; September 19, 2012; and October 18, 2012, but none of those examination dates pertain to the relevant time period, July 15, 2008, through December 31, 2011. Chaplin does not reference any medical records from the relevant time period that demonstrates that she has nerve root or spinal cord compression. On the contrary, the Commissioner highlights that Chaplin's treating physicians did not find evidence of nerve root compression during the relevant time period. (Doc. 20, p. 6). The Commissioner relies on an MRI from September 2009, which showed no evidence of focal disc herniation,[5] spinal stenosis,[6] or neural foraminal encroachment.[7] (Tr. 545). The Commissioner implies that the ALJ was aware of these facts because he noted them in his opinion. (Doc. 20, p. 6; Tr. 16). Additionally, an MRI from February 2010 shows that Chaplin had mild degenerative spondylosis and slight spondylolisthesis,[8] but did not reveal evidence of nerve root or spinal compression. (Tr. 550).

Next, Chaplin specifically alleges that her medical records contain evidence of neuro-anatomic pain distribution.[9] (Doc. 19, p. 5). Again, of the 15 entries that Chaplin cites for this proposition, only three of those entries are for the relevant time period. (Tr. 475, 642, 655-57). Of those, only one, a post-operation assessment by Dr. Alan Hurschman from October 2009,

---

[5] The "extension of disk material beyond the posterior annulus fibrosus and posterior longitudinal ligament and into the spinal canal." *Stedman's Medical Dictionary* 814 (27th ed. 2000).

[6] The narrowing of spinal column or canal. *See Stedman's Medical Dictionary* 1671, 1695 (27th ed. 2000).

[7] The narrowing of the openings (neural foramina) where the spinal nerves leave the spinal column. *Spinal Stenosis*, United States Nat'l Library of Med., https://www.nlm.nih.gov/medlineplus/ency/article/000441.htm (last visited Mar. 16, 2016).

[8] "Forward movement of the body of one of the lower lumbar vertebrae on the vertebra below it, or upon the sacrum." *Stedman's Medical Dictionary* 1678 (27th ed. 2000).

[9] "[N]euroanatomic distribution of pain 'entails pain radiating to the extremities[.]'" *Woods v. Colvin*, No. 3:14-CV-1990-B-BH, 2015 WL 5311142, at *13 (N.D. Tex. Aug. 26, 2015) (quoting *Jordan v. Astrue*, No. 101899, 2012 WL 443791, at *7 (W.D. La. Jan.13, 2012)).

indicates that Chaplin suffers from bilateral neural foraminal stenosis and bilateral radiculopathy.[10] (Tr. 475). Another of those entries, Dr. Hurschman's examination notes from April 2011, lists Chaplin's subjective complaints of radiating pain, but the actual examination notes indicate a normal range of motion and muscle strength in Chaplin's spine and extremities. (Tr. 642-643). Chaplin's final citation, a checklist-type disability assessment by Dr. Dillon Mathews from September 2011, states only that Chaplin has lumbar radiculopathy. (Tr. 657). Further, Dr. Dillon's assessment states that he bases his opinion solely from the evaluation of the "Pain Management Doctor." (Tr. 657). Without more, Dr. Dillon's assessment is conclusory at best. *See Newton*, 209 F.3d at 456 ("Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence."). Even accepting Chaplin's assertion that her medical records contain evidence of neuro-anatomic pain distribution, there is no evidence that the radiating pain lasted for a continuous period of 12 months during the relevant time period. *See* 20 C.F.R. §§ 404.1509, 404.1520(d). As such, Chaplin fails to demonstrate evidence of nerve root or spinal compression through neuro-anatomic pain distribution. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1.

Chaplin then tries to demonstrate a limitation in her spinal motion through citations to six entries in her medical records. (Doc. 19, p. 6). Once again, every one of these citations refers to an examination outside of the relevant time period. Accordingly, Chaplin fails to demonstrate evidence of nerve root or spinal compression through limitation in her spinal motion. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1.  Next, Chaplin alleges that her medical records show motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or

---

[10] A "[d]isorder of the spinal nerve roots." *Stedman's Medical Dictionary* 1503 (27th ed. 2000).

reflex loss. (Doc. 19, p. 6). Chaplin cites 11 entries from her medical records that contain such evidence. However, all but two of these entries do not pertain to the relevant time period. Chaplin cites, without explanation, an "Initial Consult/New Patient Documentation Tool" completed by Dr. Hurschman on November 17, 2009. (Tr. 472). A review of that document reveals that Dr. Hurschman circled "weakness" under the "Neuro/Psych" portion of the form. (Tr. 472). The form contains several areas of subjective material seemingly reported by Chaplin, but it is unclear whether the "weakness" note results from a subjective report or the findings of an examination. Also, Chaplin cites, again without explanation, a "Progress Note" from Dr. Hurschman on April 14, 2011. (Tr. 642). However, Chaplin's reference contains only subjective reports by Chaplin of her complaints on that date. (Tr. 642). But, the next page details the results of Dr. Hurschman's physical examination where he repeatedly finds Chaplin's muscle strength and tone to be within normal limits for her entire musculoskeletal system. (Tr. 643). Consequently, Chaplin did not meet her burden of showing that she had nerve root or spinal compression evidenced by atrophy with sensory or reflex loss. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1.

Finally, since her lower spine is involved, Chaplin must show evidence of positive straight-leg raising tests. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. Chaplin references six entries in her medical records to demonstrate positive straight-leg raising tests, but only one of those entries refers to the relevant time period. That entry by Dr. Hurschman on April 14, 2011, reads, "straight leg raise test positive at 45 degrees." (Tr. 643). Chaplin cites to no other positive straight-leg raising tests from July 15, 2008, through December 31, 2011. Chaplin's one relevant example of positive straight-leg raising is insufficient to satisfy the durational 12-month requirement. *See* 20 C.F.R. §§ 404.1509, 404.1520(d).

The Commissioner avers that Chaplin has failed to show at least one of the criterion of Listing 1.04A, and, thus, her condition cannot meet or equal that Listing. (Doc. 20, p. 7). The Court agrees. *See Zebley*, 493 U.S. at 531 (a claimant must show that her impairment matches *all* specified medical criteria in order to meet or equal a Listing). Beyond failing to meet or equal *all* of the Listing 1.04A criteria, Chaplin failed to demonstrate that her impairment equaled or met *any* of the criteria. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. The Commissioner argues, and the Court concurs, that the ALJ had no reason to specifically consider and discuss Listing 1.04A since Chaplin did not carry her burden of showing that her impairment met or equaled that Listing. (Doc. 20, p. 9). Accordingly, the Court finds that substantial evidence supports the ALJ's determination that Chaplin's back impairment did not meet or equal the Listings. *See Newton*, 209 F.3d at 452; 42 U.S.C. § 405(g).

## IV.   CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and Plaintiff's complaint be **DISMISSED**.

**IT IS ORDERED** that this case is **TRANSFERRED** back to the docket of the United States District Judge.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the

briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superceded by statute on other grounds*, 28 U.S.C. § 631(b)(1) (extending time to file objections from ten to fourteen days), *as recognized in ACS Recovery Servs. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012).

**SO ORDERED.**

Dated March 17, 2016.

_____
**E. SCOTT FROST**
**UNITED STATES MAGISTRATE JUDGE**